**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

UNITED STATES OF AMERICA,

|  | Case No.: | 3:97-cr-81-RV/MD |
| v. | | 3:97-cr-92-RV/MD |
| | | 3:97-cr-103-RV/MD |

CHRISTOPHER SUMMERS

_____/

**ORDER**

Pending are three motions filed by the defendant, pro se, in the three above-numbered cases: "Title 5 Fed. R. App. P. 21(a) Writ of Mandamus, Prohibition and Other Extraordinary Writs" (docs. 81, 79, 76, respectively).[1] I have construed this motion --- in which the defendant alleges sentencing error and requests that he be resentenced --- as seeking reconsideration of the defendant's previous motion for writ of error coram nobis, which he filed on June 10, 2008, and which I denied by order of June 17, 2009. I directed the government to respond to the motion, and it has done so. The defendant has since filed a reply.

**I. Background**

This case has a long history that does not need to be described here in great detail. What matters for purposes of the pending motion is that the defendant was charged with (and pleaded guilty to) seven bank robberies --- five in Case No. 3:97-CR-81, and one in each of the other two cases --- which yielded him a sentencing guideline range of 140-175 months. On December 18, 1997, I sentenced him to 175 months. He successfully appealed a sentencing guideline issue related to this sentence to the Eleventh Circuit Court of Appeals, after which he was remanded back to this court for resentencing. His calculated guideline range on remand was

---

[1] These three motions are identical. For convenience, in this order I may refer to the motions in the singular.

120 to 150 months. A resentencing hearing was held on November 22, 1999. This hearing --- the transcript of which has recently been filed in each of the three above cases (docs. 83, 81, 78, respectively ("Tr.")) --- was most extraordinary.

The hearing began with the government stating its notice of intent to seek an upward departure from the 120 to 150 months guideline range "based on the underrepresentation of the defendant's criminal history." See Tr. at 2. This request was based, in part, on the fact that the defendant had, subsequent to his original sentencing, been convicted of additional robbery, theft, and burglary offenses in Florida state court, for which he had been sentenced to 18 years incarceration. See id. at 3. If his criminal history were properly calculated to include those more recent offenses, the government maintained, the defendant should have a guideline range of 151 to 188 months. See id. at 6. Rather than oppose this upward departure, the defendant (both personally and through counsel) made what he aptly described as a "rather unusual request": he asked that I impose a "significantly" higher sentence. The basis for this request was explained by his attorney, Thomas Keith, as follows:

> [I]n talking with Mr. Summers, . . . he tells me that as long as he has a state sentence that's longer than his federal sentence, [the state] will put a detainer against him, and that detainer will cause him to have a certain number of points in his classification as to where he can serve his federal sentence at.  And as long as that detainer is there for a serious --- they call it a serious detainer --- he will never be able to serve his time outside of a penitentiary setting, federal penitentiary setting. He's been stabbed once already in the federal penitentiary since he's been serving his time. He certainly would like to get away from that environment, if he can. So he's asked me to ask the court to sentence him --- he doesn't care if the court departs upward significantly --- and give him a sentence that would require him to serve more [but, counsel noted, it "doesn't have to be much more"] time in the federal system than the state has sentenced him to.

See id. at 7-8 (emphasis added). His attorney emphasized that if this request for a "significantly" higher sentence was granted, "of course, [the defendant] would be willing to waive any appeal, waive any § 2255." See id. at 8.

The defendant then addressed the court directly. He expressed his opinion that "penitentiary life is probably the worst life," and by requesting an upward departure he was "trying [his] best to get to a lower security prison." See Tr. at 10-11. He was aware that his request, if granted, would mean that he must serve more time in a federal prison than would otherwise be required, but he stated that "I might as well do [my time] in a federal prison versus in the state prison because I've been to state prison and it's not any better. That's the reason behind asking for the upward departure." See id. at 11-12. This exchange then followed:

> THE COURT: So if I understand correctly, you want to remain in federal custody until the state sentence has also expired, and that would also mean there is no detainer or writs while you are in federal custody.
>
> THE DEFENDANT: That's correct.
>
> THE COURT: The federal sentence [must] exceed the current state sentence?
>
> THE DEFENDANT: The reason, Your Honor, that is if I have one day less state time than I do my federal time, they would release the detainer off of me.
>
> THE COURT: Well, I've heard lots of horror stories about penitentiaries. I'm not sure that a level 3 is gonna be a lot better than penitentiary, but it may well be.
>
> THE DEFENDANT: Yes. Quite a bit better.

See id. at 12-13. He further stated his belief that under state law (specifically, the "Gort Act" [Fla. Stat. § 775.084]), the 18-year state sentence was a "mandatory sentence," which would require him to serve virtually "100 percent of [that] time." See Tr. at 9, 15.

Case No.: 3:97-cr-81-RV/MD; 3:97-cr-92-RV/MD; 3:97-cr-103-RV/MD

After stating on the record that "an upward departure is probably called for in this case" and that "I can justify the departure" --- and because "I know of no reason why I cannot do ['what Mr. Summers is asking']" --- I called for a short recess to allow the parties a chance to "play with the numbers" and "go through it independently." <u>See</u> Tr. at 8, 16, 18. When the hearing resumed, defense counsel determined that to accomplish what they were seeking, I would need to sentence the defendant to at least 288 months (which, when his current and future credit was factored in, would put the federal sentence a "little" over the state sentence). <u>See</u> <u>id.</u> at 19-20. Counsel further stated:

> [W]e've, of course, asked the court to do something very, very unusual, but there is certainly a reason for it. And in the long-term Mr. Summers believes that's in his best interest to be able to possibly get out of the penitentiary. He's gonna serve apparently, you know, almost the 18 years with the state sentence. So he's not going to get out before that time. If this court imposes a sentence that would require him to serve about that much more time now, it's not gonna affect his ability to be released. It may help him get to an FCI facility, that's what he wants.

<u>See</u> <u>id.</u> at 20-21. Throughout the hearing I asked the defendant repeatedly if he understood what he was asking the court to do, and if he appreciated what the practical effect of that request would be. Each time, he said that he did.[2] At one

---

[2] <u>See</u> Tr. at 15 ("THE COURT: Mr. Summers, are you sure --- are you sure you want to do [this]? THE DEFENDANT: Yes, sir."); <u>id.</u> at 23-24 ("THE COURT: You realize that the effect of this is you are gonna be in the federal prison longer than you would otherwise be . . . .THE DEFENDANT: Exactly. THE COURT: Do you understand that? THE DEFENDANT: Yes, sir. THE COURT: Is that what you want to do? This is your last chance on the record to say anything to the contrary. If you want to do something else, tell me now. THE DEFENDANT: No, sir. That is what I want to do. THE COURT: You are sure that's what you want to do? THE DEFENDANT: Yes, Sir. THE COURT: Mr. Keith, have you discussed this with him during the recess and before? MR. KEITH: Yes, Your Honor.").

point, I specifically emphasized to him that "the circumstances themselves may be different" than what he believed, and he insisted that he understood. See id. at 24. After being satisfied that he knew of, and appreciated, the consequences of what he was asking me to do, I sentenced the defendant to 288 months imprisonment, the exact length of time that both he and his attorney had requested. The sentence consisted of 230 months incarceration in Case No. 3:97-CR-81; 30 months in Case No. 3:97-CR-92; and 28 months in Case No. 3:97-CR-103, with the incarceration sentence in each case to run consecutively. Pursuant to his agreement and waiver, the defendant did not appeal this sentence and nothing happened in the case for several years.

As it turns out, the defendant was mistaken in his belief that a longer federal sentence would result in the state lifting its detainer, which would result in a lower classification and allow him to avoid serving his sentence in a federal penitentiary. He was, in fact, housed in a penitentiary. On February 12, 2007, seven years into his sentence, he filed a "Motion for Placement in the Department of Corrections of Florida," requesting that I transfer him from the "harsh conditions" of the federal penitentiary to a state prison "away from the federal inmates that mean to do me harm." He maintained that his previous request for a higher federal sentence was "unintelagent" [sic] and based on "misinformed information." I denied this motion.

On March 30, 2007, the defendant filed a "Motion to Void Judgment, Order or Proceeding Under Title 28 U.S.C. Federal Rules of Civil Procedure, Rule 60(b)(4) (5) (6) et seq." In this motion, he was expressly "attacking . . . the process leading up to [his] sentencing," including his earlier request for the upward departure. The defendant explained that shortly after he returned to the penitentiary following his resentencing hearing, he learned that "the detainers were still lodged because the Department of Corrections of Florida lodged a detainer until 6-12-2017," and thus "a higher federal prison sentence could not and did not prevent the Federal Bureau

of Prisons from using detainers against defendant." He maintained that if he had "not requested a higher sentence, based upon misinformation, and permitted this court to entertain the appeal court's decision to correct [the original] sentence of 175 months as ordered, the defendant would be out of the Federal Bureau of Prisons and in the State of Florida, away from [federal inmates] . . . , and serving his 18 year state sentence." The defendant requested that the court "vacate said sentence and permit defendant to plea anew." This motion was denied as well.

On June 10, 2008, the defendant filed his coram nobis motion, noted <u>supra</u>. He argued in this pleading that not only had he been mistaken in his belief that the longer federal sentence would eliminate the need for the state detainer and allow him to obtain placement in a lower security prison, but he had also been mistaken as to the purported "mandatory" nature of his 18-year state sentence. Specifically, he asserted:

> It wasn't until May 7th, 2007, that petitioner was made aware by the Clerk of Court (state) in Hillsborough County that his 18 year sentence in the State of Florida was not "mandatory" as offered to the court, of which the court based its sentencing on. . . [B]ecause the 288 month total sentencing package was designed to "override" an 18 year "mandatory" state sentence, it was completely too much time due to the 18 year state sentence not being "mandatory." Petitioner's current release date for the said 18 year state sentence is in the year 2014. Because the petitioner is able to earn "good time" in the state, his release date will now be some 4 plus years excessive as to his federal release date of 1/20/2019. It is obvious that the court was only acting in the best interest of the petitioner, however, the sentence was only to "override" the state sentence by mere months. Had the court known that the sentence was not 18 years mandatory, it is the petitioner's belief, that the court would have properly calculated the new sentences differently. But, because of the misinformation, a 288 month sentence was handed down.

Because, he maintained, "the higher/harsher sentence was imposed only at the request of the defendant," the defendant requested that I withdraw the upward-departed sentence and impose a sentence consistent with the Eleventh Circuit's original remand of the case.

I denied the defendant's coram nobis motion in June 2009. However, after close review of the now-pending "Title 5 Fed. R. App. P. 21(a) Writ of Mandamus, Prohibition and Other Extraordinary Writs" (which, as noted, I have construed as a motion for reconsideration), I entered a follow-up order stating that: "Upon further consideration of the defendant's motion and record of this case, including a review of the transcript of the [resentencing hearing], it appears that this may [be] one of the very unusual cases that may qualify for coram nobis relief." The government subsequently filed its response to the defendant's motion, and the defendant has filed a reply to that response.

## II. Discussion

Preliminarily, I want to make clear that I am sympathetic to the defendant's argument. If it were up to me, and if I had the jurisdiction and authority to do so, I would reduce his sentence. Although an upward departure from the original 120-150 month sentencing guideline range was appropriate and justified --- for all the reasons discussed at the resentencing hearing --- I would not have sentenced the defendant to 288 months on the particular facts of this case.[3] I only imposed that much harsher sentence because, as he urged at the hearing: "Like Mr. Keith said, this is all in my best interest." <u>See</u> Tr. at 23. Even though he was represented by an attorney; he was repeatedly told about what a higher federal sentence would mean; he was specifically warned that "the circumstances" of his case "may be

---

[3] Indeed, it should be noted once again that the government had originally requested an upward departure from the 120-150 month range to the 151-188 month range. As it is, the defendant received exactly <u>100 months more</u> than the maximum of that modified range.

different" than what he believed at the time; and he waived any right to an appeal, the fact remains that the defendant received an inordinately more severe sentence than he would have otherwise been given, and thus, in the interests of fairness, I would be willing to grant him a sentence reduction. The question, however, is not whether I <u>would</u> grant him such relief, but whether I <u>can</u>, either via coram nobis or by some other lawful method.

"The ancient writ of coram nobis" was available at common law "to correct errors of fact . . . that affect the 'validity and regularity' of the judgment." <u>United States v. Morgan</u>, 346 U.S. 502, 506-507, 74 S. Ct. 247, 98 L. Ed. 2d 248 (1954). In <u>Morgan</u>, the Supreme Court determined that the broad all-writs section of the judicial code [28 U.S.C. § 1651(a)] bestows on federal courts the authority to issue writs in the nature of coram nobis. <u>Id.</u> at 511. The remedy provided by the writ, however, is very limited. <u>See</u> <u>United States v. Mayer</u>, 235 U.S. 55, 69, 35 S. Ct. 16, 59 L. Ed. 129 (1914). Continuation of litigation after final judgment and the exhaustion or waiver of appeal rights "should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." <u>See</u> <u>Morgan</u>, <u>supra</u>, 346 U.S. at 511. Such compelling circumstances exist only when the error at issue involves a matter of fact "'of the most fundamental character,'" which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid. <u>See id.</u> at 512 (quoting <u>Mayer</u>, <u>supra</u>, 235 U.S. at 69); <u>accord</u> <u>Lowery v. United States</u>, 956 F.2d 227, 230 (11th Cir. 1992) (coram nobis jurisdiction will exist only to correct "manifest injustice," and is of "'limited scope, existing in those cases where the errors [are] of the most fundamental character, that is, such as render[ing] the proceeding itself irregular and invalid'") (collecting multiple cases).

Irrespective of whether this case raises issues of fundamental and manifest injustice, the government maintains that coram nobis relief is simply not available on the facts presented because the defendant is still "in custody." Although there

appears to be at least some case law to the contrary [see United States v. Rhines, 640 F.3d 69, 71 (3d Cir. 2011) (coram nobis relief is "usually," but not always, "reserved for situations where the petitioner is no longer serving his sentence"), citing United States v. Dawes, 895 F.2d 1581, 1582 (10th Cir. 1990) (coram nobis granted "in spite of the fact that the defendants are in custody")], Eleventh Circuit authority makes clear that in this circuit coram nobis is not available to a defendant "in custody." See, e.g., United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) ("A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody"); United States v. Garcia, 181 F.3d 1274, 1274 (11th Cir. 1999) ("Coram nobis relief is unavailable to a person, such as the appellant, who is still in custody"). Accordingly, I am without jurisdiction to grant the defendant coram nobis relief.

The defendant recognizes this "in custody" jurisdictional requirement, but he argues in reply to the government's response that it "would appear" he has served the 30 and 28-month sentences that were imposed in Case Nos. 3:97-CR-92 and 3:97-CR-103, which means that he is no longer "'in custody' for these sentences. Therefore, error coram nobis is available for those two cases, due to those terms having been served." In other words, as he alleged in his coram nobis motion, the 58 months that he was improperly incarcerated on those two cases has had the practical effect of lengthening or enhancing the 230-month sentence in Case No. 3:97-CR-81 that he is currently serving, and should "be credited to [this] current sentence." However, case law in this circuit and beyond precludes the argument. See, e.g., Correa-Negron v. United States, 473 F.2d 684, 685 (5th Cir. 1973) (coram nobis relief is not available "where a petitioner is still in federal custody," even though the challenge involves "a prior invalid conviction") (binding under Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)); accord United States v. Little, 608 F.2d 296, 299 (8th Cir. 1979) (holding that relief "does not lie in coram nobis" where the defendant is in federal custody

under one conviction, even though he is challenging an earlier, allegedly improper conviction). Both Correa-Negron and Little emphasize that where the defendant is in federal custody under one conviction, and he is challenging an earlier conviction that has already been completed --- but which in effect lengthens or enhances the current incarceration --- the proper remedy is a petition for habeas corpus pursuant to Title 28, United States Code, Section 2255.

However, relief would not be available to the defendant even if I were to construe his coram nobis motion (which he filed pro se) as a petition for habeas relief under Section 2255. See United States v. Brown, 117 F.3d 471, 474-75 (11th Cir. 1997) (coram nobis relief not available to the defendant because he was "in custody"; so the court construed his pro se coram nobis motion under Section 2255). That statute provides that a federal prisoner may be released if the sentence was imposed in violation of the Constitution or laws of the United States, the court had no jurisdiction to impose the sentence, the sentence imposed was in excess of the maximum allowed by law, or it is otherwise subject to collateral attack. Putting aside the fact that defendant specifically waived his right to file any Section 2255 motion in this case, the motion would have to be denied as untimely as it was filed almost 9 years after the disputed sentence was imposed. See 28 U.S.C. § 2255(f) (establishing a one-year statute of limitations for filing a Section 2255 motion).[4]

─────────────────────────

[4] It must be emphasized, however, that the timing of the defendant's motion arguably presents a closer issue than appears at first blush. The one-year statute of limitations in Section 2255 does not begin to run until the latest of, inter alia, "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." See 28 U.S.C. § 2255(f)(4). As already discussed, the defendant asserts that he found out on May 7, 2007, that his 18-year state sentence was not "mandatory" (and he knew long before then that the state was not going to lift its detainer and that he was to be housed in a penitentiary). Thus, assuming arguendo that I could overlook the defendant's clear and express waiver of his right to file a Section 2255 motion, he had until May 7, 2008, to seek relief under that statute. His writ of error coram nobis, if construed as a motion under Section 2255, was filed one month too late, on June 10, 2008.

Nor do I have "inherent authority" to grant the defendant the relief he seeks for "a district court has no 'inherent authority' to modify a sentence that has already been imposed." United States v. Catalano, 2011 WL 2342581, at *1 (11th Cir. June 14, 2011) (citing United States v. Diaz-Clark, 292 F.3d 1310, 1315-19 (11th Cir. 2002) (district court has no jurisdictional authority to alter or modify a sentence once imposed, other than in specific and limited circumstances, "'even if the sentence was legally erroneous'"). Rather, as the Eleventh Circuit recently held, "[t]he authority of a district court to modify an imprisonment sentence [once it has been imposed] is narrowly limited by statute," specifically:

> [Title 18, United States Code,] § 3582(c) provides that a [district] court may not modify an imprisonment sentence except in these three circumstances: (1) where the [federal] Bureau of Prisons has filed a motion and either extraordinary and compelling reasons warrant a reduction or the defendant is at least 70 years old and meets certain other requirements; (2) where another statute or Federal Rule of Criminal Procedure 35[5] expressly permits a sentence modification; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the Commission and certain other requirements are met.

United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Because none of the above circumstances appear to be present in this case, I must (reluctantly) conclude that I have no jurisdiction to reconsider or modify the defendant's 288-month sentence, even though (as previously explained) some things learned after-

---

[5] Rule 35 is limited, and it provides that a district court may (1) within 14 days after sentencing, modify a sentence to correct a technical, arithmetical, or other clear error; or (2) reduce a sentence if the defendant provided "substantial assistance" to the government, neither of which is applicable here. As Rule 35's Advisory Committee Note states, authority under this rule is "very narrow" and "not intended to afford the court the opportunity . . . simply to change its mind about the appropriateness of the sentence."

Case No.: 3:97-cr-81-RV/MD; 3:97-cr-92-RV/MD; 3:97-cr-103-RV/MD

the-fact have shown the length of that sentence to be excessive.[6]

**III. Conclusion**

For these reasons, the defendant's "Title 5 Fed. R. App. P. 21(a) Writ of Mandamus, Prohibition and Other Extraordinary Writs" (docs. 81, 79, 76 in the above-numbered cases), construed as motions for reconsideration of his earlier motion for writ of error coram nobis, are each DENIED.


DONE and ORDERED this 1st day of August, 2011.

/s/ Roger Vinson
ROGER VINSON
Senior United States District Judge

---

[6] At the time he was resentenced, and in the several years thereafter, the defendant did not contend that the 288-month sentence --- although high --- was unlawful; indeed, it was the exact sentence that the defendant and his attorney requested. As noted, the problem is the defendant was apparently mistaken as to the facts and legal ramifications of his state sentence, and this mistake frustrated what he and his attorney (and this court) had expected. Given that this case has such an unusual factual background, I was not able to find any case factually on point. But, I did find a somewhat analogous case that reinforces the conclusion I have reluctantly reached here. In United States v. Addonizio, 442 U.S. 178, 99 S. Ct. 2235, 60 L. Ed. 805 (1979), the district court sentenced defendant to a period of incarceration with a particular "sentencing expectation" that was frustrated by the Parole Commission's subsequent adoption of new policies and procedures. The defendant moved to be resentenced, and the trial judge accepted jurisdiction on the basis that the Parole Commission had not given defendant the kind of "meaningful parole hearing" that he (the judge) had expected when he imposed sentence; and he reduced the sentence accordingly. In reversing, the Supreme Court stated that while the sentencing judge "may well have expectations" as to how the sentence would be carried out, what took place after the sentence was imposed "affected the way in which the court's judgment and sentence would be performed but did not affect the lawfulness of the judgment itself." In noting that "once a sentence has been imposed, the trial judge's authority to modify it is [] circumscribed," the Court explained that "the sentence was and is a lawful one. And in our judgment, there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." See generally id. at 180-90.

Case No.: 3:97-cr-81-RV/MD; 3:97-cr-92-RV/MD; 3:97-cr-103-RV/MD